UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PATRICIA LEIGH STANSFIELD,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>    Defendant. | No. CV 12-10090-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on November 30, 2012, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on January 8, 2013, and January 11, 2013. Pursuant to the Court's Order, the parties filed a Joint Stipulation on November 20, 2013, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.
/
/

## II.

## **BACKGROUND**

Plaintiff was born on November 14, 1970. [Administrative Record ("AR") at 103, 205, 210.] She has a college education, and past relevant work experience as an actress, assistant supervisor, floater/temp in finance, waitress/hostess, project coordinator, administrative temp, and systems and operations administrator. [AR at 52-55, 88, 321.]

On February 27, 2008, plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging that she has been unable to work since January 1, 2003. [AR at 26, 205-07, 210-11.] After her applications were denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 109, 121-26, 127-31, 133-34.] A hearing was held on December 1, 2008, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 47-72.] A vocational expert ("VE") also testified. [AR at 70-71.] On April 10, 2009, the ALJ issued a partially favorable decision, concluding that plaintiff was not disabled prior to February 27, 2008, but became disabled on that date and continued to be disabled through the date of the decision. [AR at 109-14.] Plaintiff requested review of the decision with the Appeals Council. [AR at 160.] On September 18, 2010, the Appeals Council granted plaintiff's request for review, vacated the entire decision, including the favorable portion, and remanded for further administrative proceedings. [AR at 116-20.] In its decision, among other things, the Appeals Council noted that the hearing decision "does not evaluate [plaintiff]'s credibility in accordance with [Social Security Ruling[1]] 96-7p," and ordered the ALJ, on remand, to "evaluate [plaintiff]'s subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms . . . and [SSR] 96-7p." [AR at 119.]

---

[1] "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n. 1 (9th Cir. 2001) (internal citations omitted).

On April 21, 2011, a second hearing was held before an ALJ. [AR at 73-102.] Plaintiff again appeared and testified, along with a medical expert and a VE. [AR at 76-85, 85-96, 96-102.] On May 17, 2011, the ALJ issued a decision finding that plaintiff was not disabled. [AR at 26-40.] When the Appeals Council denied plaintiff's request for review of the ALJ's May 17, 2011, decision, that decision became final. [AR at 5-7, 21-22.] This action followed.

### III.

### STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

### IV.

### THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

A.   **THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy.  The determination of this issue comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.   **THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity from her alleged disability onset date, January 1, 2003, through her date last

insured.[2] [AR at 28.] At step two, the ALJ concluded that plaintiff has the severe impairments of fibromyalgia, Lyme disease, chronic fatigue syndrome, migraines, and depression. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings. [AR at 29.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform sedentary work as defined in 20 C.F.R. § 404.1567(a),[4] "with the following restrictions: no climbing of ladders/ropes/scaffolds; occasional climbing of ramps/stairs, balancing, stooping, kneeling, crouching, and crawling; allowance for a stretch break of 1 to 2 minutes every 30 minutes; no assembly line work; and work limited to simple routine tasks." [AR at 30.] At step four, based on plaintiff's RFC and the VE's testimony, the ALJ concluded that plaintiff is unable to perform any past relevant work. [AR at 38.] At step five, the ALJ found, based on plaintiff's RFC, vocational factors and the VE's testimony, that there were jobs existing in significant numbers in the national economy that plaintiff could have performed during the relevant time period, including work as a cashier and an addresser. [AR at 38-40.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from January 1, 2003, through December 31, 2008, her date last insured. [AR at 39-40.]

/
/
/
/

---

[2] The ALJ concluded that plaintiff last met the insured status requirements of the Social Security Act through December 31, 2008. [AR at 28.]

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[4] 20 C.F.R. § 404.1567(a) defines "sedentary" as work involving "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

# V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to provide legally sufficient reasons to reject plaintiff's subjective allegations. [JS at 5-15, 21-22.] As explained below, the Court agrees with plaintiff and remands for further proceedings.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if the claimant meets the first test, the ALJ may only reject the claimant's testimony about the severity of her symptoms upon (1) finding evidence affirmatively suggesting that the claimant was malingering, or (2) offering specific, clear and convincing reasons for doing so. See Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1999); Lingenfelter, 504 F.3d at 1036; Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); 20 C.F.R. §§ 404.1529(c), 416.929(c). If properly supported, the ALJ's credibility determination is entitled to "great deference." Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

In a March 2008 Function Report, plaintiff stated that she has difficulty sleeping and "toss[es] and turn[s] all night due to pain, anxiety, restless legs, violent nightmares, sensitivity to light, noise, and temperature." [AR at 310.] She also indicated that her daily routine involves taking medications, eating breakfast, trying to stretch, trying to do simple tasks like paying bills or writing emails, frequently resting "to alleviate pain, numbness, stiffness, and mental cloudiness," showering, eating dinner, watching TV, talking to her mother, and going to bed. [AR at 309.]

Plaintiff explained that she has discomfort when dressing herself and sometimes has to sit in the tub during a shower "because [she] get[s] nauseous, light-headed or lose[s her] balance." [AR at 310.] She further provided that she does not typically make complete meals, but instead usually eats "frozen, canned, or simply prepared foods like sandwiches, crackers, eggs, etc." [AR at 311.] In addition, she reported that although she can do some light chores, she cannot scrub, use heavy chemicals, or organize, and she can only work for "10-15 minutes before resting or needing to gather [her] thoughts and refocus." [Id.] Plaintiff also stated, "I don't have the strength, stamina or balance for lifting or carrying more than 8-10 pounds and I am always at least uncomfortable and at most in debilitating pain." [AR at 314.] She explained that she attends an acting class "1-2 times a week[,]" "observ[ing her] fellow actors performing scenes on stage," and "sometimes performing a 5-8 minute scene." [AR at 309, 313.] Finally, she explained that she sometimes thinks she can do more than she is actually capable of "and [pushes herself] too hard. Then [she] must spend more time recovering." [AR at 316.]

At the administrative hearing on April 21, 2011, plaintiff testified that pain in her right arm "never stops," keeps her from sleeping, makes her nauseous, and makes it difficult for her to do simple things, including cut food, wash her hair, and type. [AR at 89.] She explained that she was not taking any pain medication at the time of the hearing because she was in pain management treatment that included a "nerve block." [Id.] She also reported that "the strongest pain medication [she] was [prescribed]" "never helped," but that a patch that was prescribed did temporarily help alleviate her pain. [Id.] Additionally, plaintiff provided that she also takes an anti-retroviral medication, as well as medications to help her sleep, digest food, and prevent migraines, and that she receives injections when she experiences a migraine. [AR at 90.] She indicated that her treatment providers include an endocrinologist, a psycho-pharmacologist, and a pain psychologist. [Id.] According to plaintiff, her mother cooks all of her meals and freezes or buys pre-packaged foods so plaintiff can "just put them in the microwave," and does all the household chores because plaintiff is not capable of doing them. [AR at 93.] Plaintiff explained that she could sit for 15 minutes, or possibly 20 "with a cushion," and stand for approximately ten minutes at a time. [AR at 94-95.] She also stated that the most she could lift at one time was a gallon

7

bottle of water. [AR at 95.]

At step one of the two-step credibility analysis, the ALJ found that plaintiff's "impairments could reasonably be expected to cause the alleged symptoms." [AR at 37.] The ALJ nevertheless found plaintiff's subjective complaints were "not credible to the extent they [were] inconsistent with the above residual functional capacity assessment." [AR at 31.] Thus, at step two, as the record contains no evidence of malingering by plaintiff, the ALJ was required to offer "specific, clear and convincing reasons" for rejecting her subjective symptom testimony. See Lingenfelter, 504 F.3d at 1036. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines [plaintiff]'s complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (internal quotation marks and citation omitted).

In her decision, the ALJ rejected plaintiff's subjective symptom testimony for the following reasons: (1) "the objective clinical findings do not support the extreme limitations alleged[;]" (2) plaintiff did not take "any medications for her symptoms throughout the entire summer of 2006" and "medications have been relatively effective in controlling" her symptoms; (3) plaintiff's "work history and activities of daily living" indicate her physical abilities "have, at least at times, been considerably greater than alleged[;]" (4) the record is "filled with inconsistent statements made by" plaintiff; and (5) "[d]espite the alleged severity of her depression, [plaintiff]'s treatment has only been through her primary care physician." [AR at 32-34.]

Having carefully reviewed the record and the Joint Stipulation, the Court finds that the ALJ's reasons for rejecting plaintiff's credibility do not constitute clear and convincing reasons and/or are not supported by substantial evidence. First, the ALJ's rejection of plaintiff's credibility because she did not take "any medications for her symptoms throughout the entire summer of 2006" and because the record indicates that "medications have been relatively effective in controlling [her] symptoms" [see AR at 33-34], misstates the record and is not supported by substantial evidence. See Lingenfelter, 504 F.3d at 1036 (explaining that reasons for discrediting plaintiff that misstate the record "provide[] no support for the [ALJ's] credibility finding[]"); Reddick, 157 F.3d at 722-23 ("In essence, the ALJ developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports. His paraphrasing of record material is not

entirely accurate regarding the content or tone of the record."). For example, the October 2006 treatment note, apparently relied on by the ALJ, indicating that plaintiff did not take pain medication during that summer also provides that plaintiff was undergoing electromagnetic treatment during that period. [AR at 33, 551.] The ALJ, focusing only on plaintiff's pain medications, did not address whether she may not have needed any pain medication during this period because the electromagnetic therapy was effectively reducing her symptoms.

Moreover, the ALJ cites a March 2011 treatment note to support her finding that plaintiff "reported her symptoms were consistently controlled, the trigger point injections had been quite helpful, reduction in her medications had markedly reduced her fogginess, and overall she was much happier." [AR at 34; see also AR at 651.] Despite the ALJ's characterization, however, the March 2011 note indicates that while plaintiff experienced some progress, she also continued to have an irregular heart rate, "multiple active trigger points," myofascial pain, chronic daily headaches, and facet arthropathy. [AR at 651.] Additionally, contrary to the ALJ's finding, the comment regarding "happiness" actually refers to the treatment provider's own happiness that plaintiff was experiencing some reduction in her pain. [Id. ("Overall I am really happy. Her pain ratings today are about 3/10[.]")] The ALJ also fails to explain how any improvement in plaintiff's pain symptoms in 2011 relates to the symptoms she was experiencing during the relevant time period, i.e., between January 1, 2003, and December 31, 2008. In any event, reviewing the record as a whole reveals that, despite brief periods of improvement due to medication, plaintiff has continuously experienced symptoms including memory loss, weight gain, fogginess, fatigue, and pain requiring treatment and medication throughout the relevant time period. [See, e.g., AR at 542 (January 2008 treatment note indicating "severe pain/fatigue"); 524 (March 2008 referral letter from plaintiff's treating physician noting that while plaintiff has experienced "brief periods of improvement, overall [she] ha[s] been unable to make any sustained significant improvements" in her symptoms); 541 (April 2008 treatment note indicating that plaintiff was feeling fatigued); 540 (June 2008 treatment note indicating plaintiff "felt much worse"); 539 (August 2008 treatment note indicating plaintiff's "very poor balance"); 538 (September 2008 treatment note indicating severe fatigue); 535 (October 2008 orthopedic examination indicating that, despite treatment, plaintiff has

increased pain in arm, tailbone, and numbness in hip); 537 (November 2008 treatment note indicating "patient feeling worse" with "severe pain").] See also Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person . . . makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."). Thus, the ALJ's finding that plaintiff's pain was adequately controlled with medication is not supported by substantial evidence and, thus, is not a clear and convincing reason for rejecting her subjective pain allegations.

      Second, the ALJ's rejection of plaintiff's credibility based on her daily activities and work history [see AR at 34], is not supported by substantial evidence. In particular, the ALJ noted that, in a June 2006 orthopedic evaluation, plaintiff reported "hav[ing] been on her feet for 14 to 18 hours a day for 4 days in a row on concrete while making a film," and, later that same month, "reported right handed pain exacerbated with the use of a staple gun while painting on a theater set." [Id.] The ALJ also highlighted that plaintiff participated in an acting class "1 to 2 times a week, requiring her to perform on stage." [Id.] Although the ALJ acknowledged that the instances of "work activity" did not amount to substantial gainful activity, the ALJ concluded that "such work activity in addition to her theater classes nevertheless indicates her daily activities and physical abilities have, at least at times, been considerably greater than alleged." [Id.]

      As an initial matter, the ALJ does not explain why she believed plaintiff's testimony about the extent of her daily activities and work history [see AR at 34], while at the same time finding her testimony about her alleged symptoms and resulting limitations not credible. See Carradine v. Barnhart, 360 F.3d 751, 755 (7th Cir. 2004) ("[I]f she was testifying truthfully and against her interest about her daily activities, why did the administrative law judge think she was lying about her pain?"). Moreover, the ALJ erred by failing to specify how plaintiff's activities translate into an ability to perform gainful employment. See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (holding that an ALJ must "make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination") (internal quotation marks, brackets and citation omitted); Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (ALJ errs in failing to make a finding to the effect that ability to

perform daily activities translated into the ability to perform appropriate work); see also Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). Specifically, the ALJ failed to explain how plaintiff's ability to work four days in the span of several years and use a staple gun on one occasion translates into an ability to perform sustained work activity. [See AR at 32-34.] Similarly, while the ALJ noted that plaintiff attended acting class once or twice a week, the record reveals that plaintiff was only "sometimes" a participant in "short, 5-8 minute" scenes, and the rest of the time merely observed her classmates.[5] [AR at 309, 313.] See Reddick, 157 F.3d at 722 ("disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"); Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) (disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits); see also Smolen v. Chater, 80 F.3d 1273, 1284 n. 7 (9th Cir. 1996) (noting that, although the ALJ can rely on a plaintiff's substantial daily activities to discredit plaintiff's testimony regarding her inability to work, "this line of reasoning has its limits[;] . . . [t]he Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits"). Additionally, the ALJ erred by failing to specify how plaintiff's activities are inconsistent with plaintiff's alleged symptoms and pain limitations. See Smolen, 80 F.3d at 1285; see also Reddick, 157 F.3d at 722 (explaining that only if a claimant's level of activity is inconsistent with his or her alleged limitations will these activities have any bearing on credibility). Accordingly, the ALJ erred by rejecting plaintiff's credibility based on her daily activities because "there is neither evidence to support that [plaintiff's] activities were transferable to a work setting nor proof that [plaintiff] spent a substantial part of [her] day engaged in transferable skills." Orn, 495 F.3d at 639 (internal quotation marks and citation omitted).

---

[5] Defendant incorrectly contends that plaintiff's participation in the acting class involved performing "25 8-minute scenes on stage." [JS at 19.] Plaintiff, in her Reply, contends that she performs "2 5-8 minute scenes on stage." [JS at 22.] Upon examination by the Court, plaintiff's record actually states that she "sometimes perform[s] a 5-8 minute scene on stage." [AR at 313.]

Third, the ALJ's rejection of plaintiff's credibility based on "inconsistent statements" regarding her ability to engage in self-care [see AR at 34], mischaracterizes the record and is not supported by substantial evidence. See Lingenfelter, 504 F.3d at 1036; Reddick, 157 F.3d at 722-23. Specifically, the ALJ noted that while plaintiff alleged in her March 2008 Function Report and at the hearing that she was unable to prepare meals or walk for sustained periods of time, she indicated in a May 2008 psychological evaluation that she had "no difficulty making meals, dressing, bathing, or walking." [AR at 34 (internal citation omitted).] A review of the May 2008 psychological evaluation, however, reveals that plaintiff "indicate[d] she needs help with shopping and doing household chores but not with making meals, dressing, bathing or walking." [AR at 468.] Plaintiff did not report that she has "no difficulty" with these tasks, but that she does not need "help." More importantly, this statement is entirely consistent with plaintiff's allegations in the March 2008 Function Report that while she can perform some self-care activities, she has "discomfort" when dressing, "sometimes has to sit in [the] tub during [a] shower because [she gets] nauseous, light-headed or lose[s] balance," and has difficulty caring for her hair, shaving, and preparing meals other than frozen or pre-packaged meals. [See AR at 310.] This statement is also consistent with her allegations at the hearing that her mother freezes meals for her and/or purchases pre-packaged meals that she simply heats up in the microwave. [See AR at 93.]

Fourth, the ALJ's finding that plaintiff's allegations were not credible because the treatment for her depression "has been essentially routine and/or conservative in nature" [AR at 34], is not clear and convincing. While plaintiff alleged an inability to work based, in part, on depression, she also indicated that she suffered from fibromyalgia, Lyme disease, chronic fatigue syndrome, and migraines. [AR at 28.] Indeed, plaintiff never alleged that all of her symptoms resulted from depression. [AR at 85-96.] Moreover, the record does reveal that plaintiff was hospitalized at least once as a result of her depression. [AR at 639 (March 2011 treatment note indicating that plaintiff was "taken to St. Joseph's Medical Center" because of concerns that "she may have been suicidal.").] In any event, there is no evidence in the record that any physician ever opined or recommended that more could have been done to alleviate plaintiff's symptoms resulting from depression. See Lapeirre-Gutt v. Astrue, 382 Fed.Appx. 662, 664 (9th Cir. 2010) (unpublished

disposition) ("A claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist.").

Finally, the ALJ erred to the extent that she rejected plaintiff's testimony based on a lack of objective medical evidence. [AR at 17.] The ALJ concluded that plaintiff presented sufficient medical evidence of an underlying impairment that "could reasonably be expected to produce the alleged symptoms[.]" [AR at 37.] Once plaintiff produces objective medical evidence of an underlying impairment that is reasonably likely to cause the alleged symptoms, medical findings are not required to support the severity of pain or symptoms alleged.[6] See Smolen, 80 F.3d at 1282; see also SSR 96-7p, 1996 WL 374186, at *1 ("An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.").

In sum, the ALJ failed to provide any clear and convincing reasons supported by substantial evidence to support her rejection of plaintiff's credibility.

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004); Varney v. Sec'y of Health & Human Servs. (Varney II), 859 F.2d 1396, 1401 (9th Cir. 1988); see also Lingenfelter, 504 F.3d at 1041 (9th Cir. 2007). Where there are

---

[6] The Court notes, however, that the record does contain significant objective medical evidence of plaintiff's impairments that could reasonably cause pain and other symptoms, including chronic fatigue syndrome/fibromyalgia, Lyme disease, attention deficit and hyperactivity disorder, chronic yeast infections, migraines, anxiety, depression, chronic pain, kidney stones, hiatal hernia, uterine polyps, immune deficiency, pituitary dysfunction, Adrenol insufficiency, 6H deficiency, chronic EBU, and Hypercoagulatia. [See, e.g., AR at 634.]

13

1  outstanding issues that must be resolved before a determination can be made, and it is not clear
2  from the record that the ALJ would be required to find plaintiff disabled if all the evidence were
3  properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96; Harman v. Apfel,
4  211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038, 121 S.Ct. 628, 148 L.Ed.2d 537
5  (2000).

6        Here, there is an outstanding issue that must be resolved before a final determination can
7  be made. However, in an effort to terminate these proceedings and to avoid any confusion or
8  misunderstanding as to what the Court intends, the Court will set forth, as clearly as it can, the
9  scope of the remand proceedings. Because there is an outstanding issue to be resolved, the court
10 has some flexibility in crediting plaintiff's testimony as true. See Varney II, 859 F.2d at 1401
11 (declining to address whether the credit-as-true rule should be adopted in cases where a remand
12 for further proceedings is required before a disability determination can be made); Vasquez v.
13 Astrue, 572 F.3d 586, 593 (9th Cir. 2008). "[T]here are other factors which may justify application
14 of the credit-as-true rule, even where application of the rule would not result in the immediate
15 payment of benefits." Vasquez, 572 F.3d at 593. In the instant case, crediting plaintiff's testimony
16 as true does not result in the immediate payment of benefits because there is no evidence in the
17 record regarding whether, assuming plaintiff's testimony is true, there is other work existing in the
18 national economy that she could perform. However, the ALJ has already issued two written
19 decisions, was specifically instructed by the Appeals Council prior to the instant decision to
20 properly assess plaintiff's credibility, and plaintiff has waited over five years for a disability
21 determination. Accordingly, the Court will exercise its discretion and order the ALJ, on remand,
22 to credit plaintiff's improperly rejected subjective allegations as true. See Hammock v. Bowen, 879
23 F.2d 498, 503 (9th Cir. 1989) (crediting improperly rejected testimony as true despite outstanding
24 issues to be resolved on remand based on the "severe" delay plaintiff experienced waiting for a
25 disability determination and her advanced age); Vasquez, 572 F.3d at 593-94 (crediting improperly
26 rejected testimony as true despite outstanding issues to be resolved on remand where claimant
27 was 58 years old and had waited over 6 years for her disability determination); see also Vasquez,
28 572 F.3d at 594 (explaining that "the purpose of the credit-as-true rule is to discourage ALJs from

14

reaching a conclusion about a claimant's status first, and then attempting to justify it by ignoring any evidence in the record that suggests an opposite result."); Varney II, 859 F.2d at 1399 ("Certainly there may exist valid grounds on which to discredit a claimant's pain testimony[.] . . . But if grounds for such a finding exist, it is both reasonable and desirable to require the ALJ to articulate them in the original decision.") (emphasis added); Benecke, 379 F.3d at 595 ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."). Then, at step five, the ALJ shall, with the assistance of a VE, determine if there is any work existing in the national economy that plaintiff can perform.[7]

## VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: December 10, 2013

/s/ Paul L. Abrams
_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[7] Nothing in this decision is intended to disturb the ALJ's step four finding that plaintiff cannot perform her past relevant work. [See AR at 38.]